**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| Helen Knight-Griffin | ) | |
| | ) | |
|     Plaintiff | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| The Town of Easton, Maryland | ) | |
| | ) | |
|     Defendant. | ) | |

**COMPLAINT**

**DISABILITY DISCRIMINATION IN LOCAL
GOVERNMENT PROGRAMS AND SERVICES**

Plaintiff, Helen Knight-Griffin, through undersigned counsel, sues the Town of Easton Maryland, and states as follows:

**INTRODUCTION**

This is an action seeking redress of violations of civil rights guaranteed Plaintiff by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and 28 CFR §§ 35.101 et seq. Plaintiff, Helen Knight-Griffin, was denied a request for accommodation by the Town of Easton, Maryland, (the "Town") when she asked the Town for assistance relocating her trash can from the corner of her home to the curb for weekly refuse pickup. The Town provides similar services to businesses in the downtown district, as well as removal of refuse from public trash receptacles, but denied Plaintiff's request due to economic reasons.

Plaintiff seeks declaratory, equitable and monetary relief under the ADA. Specifically, Plaintiff seeks a declaration that the Town's refusal to provide "back door"

refuse pickup to qualifying individuals with disabilities is unreasonable; a declaration that the Defendant wrongfully refused to provide back door refuse pickup to qualifying individuals with disabilities, such as Plaintiff; an order directing Defendant to correct its practices or offer Plaintiff and other similarly situated individuals a tax credit; and all other appropriate relief to which she is entitled under law.

## PARTIES

1. Plaintiff Helen Knight-Griffin is a natural person above the age of majority residing in Easton, MD.

2. Defendant Town of Easton, Maryland is a state or local government body located in Maryland. Defendant Town of Easton is required to comply with the ADA.

## JURISDICTION AND VENUE

3. Jurisdiction arises under 28 U.S.C. § 1331, because this action involves questions under federal laws (the ADA, 42 U.S.C. §§ 12101 et seq., and 28 CFR §§ 35.101 et seq.).

4. Venue is proper in this district because Plaintiff resides in this district in Talbot County, Maryland, the events underlying the Complaint occurred in Talbot County, Maryland, and Defendant Town of Easton is a local government body in Talbot County, Maryland.

5. Plaintiff has provided her notice of intention to file this Complaint to the applicable government entity. She is timely filing this action.

6. The remedies requested are:

    a. Issue a declaratory judgment that Defendant's policies, procedures and practices have subjected Plaintiff to discrimination in violation of Title II of the Americans with Disabilities Act;

    b. Enjoin Defendant from any policy, procedure or practice that will deny Plaintiff meaningful access to and an equal opportunity to benefit from Defendant's services or that will exclude Plaintiff from its programs or services;

    c. Order Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate in the future against Plaintiff;

    d. Order Defendant to train its employees about its obligations pursuant to federal law;

    e. Award reasonable costs and attorney's fees; and

    f. Award any and all other relief that may be necessary and proper.

## **FACTUAL ALLEGATIONS**

7. At the age of 18, Plaintiff Helen Knight-Griffin was involved in a tragic car accident that resulted in a spinal cord injury, leaving her paralyzed from the chest down.

8. Plaintiff moved to the Town of Easton (the "Town"), Maryland in 2014 with her son, who resided with her until July 2018.

9. Prior to July 2018, Plaintiff's son assisted her with household chores, including trash removal. Plaintiff now lives alone in her single-family home and utilizes a wheelchair for mobility. Plaintiff has adapted to handling most common chores by herself.

10. Plaintiff was hospitalized from September through December of 2018. Prior to returning home, Plaintiff asked the Town for assistance with trash removal, as Plaintiff found, and continues to find it physically impossible, as well as a safety risk, to haul her trash can twenty-two feet from the side of her home to the curb and back again on trash removal days.

11. In or about October 2018, Plaintiff requested assistance from the Town concerning her trash removal. Specifically, Plaintiff asked the Town to roll her trash can from a designated spot near her house, empty the can, and return it to the designated spot when the Town conducts trash removal services.[1]

12. Plaintiff pays annual property taxes, which includes weekly trash removal services.[2]

13. From the time Plaintiff reached out to the Town in October 2018, to October 2019, Plaintiff's only response from the Town was that they are "looking into it" and that Plaintiff could hire a private trash removal service.

14. From October 2018 to present, Plaintiff received assistance with her trash can relocation from neighbors, friends, and volunteer organizations[3], but that assistance was sporadic, although well-intentioned.

---

[1] Other municipalities offer similar services to qualifying individuals with disabilities, and generally refer to this as "back door" trash removal service.

[2] The Town has offered to refund Plaintiff $129 per year as a tax credit if she elects to hire a private trash removal company for trash removal and recycling.

[3] The Town has mischaracterized Plaintiff as refusing assistance from volunteer service organizations.

15. From October 2018 to present, the Town offered and continued to offer what is essentially "back door" trash removal service to certain businesses and residents, as well public trash cans in the downtown area and other Town areas of the Town, but has refused to offer back door trash removal service to Plaintiff.

16. In or about December 22, 2018, Plaintiff filed complaint 100066187 with the Civil Rights Division of the United States Department of Justice ("USDOJ") contending that the Town discriminated against her on the basis of her disability. On or about March 22, 2019, Plaintiff received notification that the USDOJ decided not to take further action on her claim due to lack of resources.

17. In October 2019, a local television station, Channel 47 ABC News, interviewed Plaintiff concerning Plaintiff's request for "back door" trash removal and posted a news segment on television and on its website.4

18. In October 2019, a news investigator from 47 ABC contacted the Town and they provided the following statement:

> "The Town is taking this request very seriously. We are sympathetic to her situation and are researching possible reasonable modifications to our Town policies and practices. As part of our research, we need to ensure that any potential modifications to Town policies and practices would be implemented uniformly. This is a high priority, and the goal is to complete the research quickly and present possible solutions to Town officials. We will notify our resident as well as make a statement as soon as possible."

19. On October 21, 2019, Plaintiff attended a Town Meeting and discussed her request with Town officials for the Town to provide "back door" trash removal for qualifying Town residents.

---

4 https://www.wmdt.com/2019/10/paraplegic-easton-resident-searching-for-a-trash-collection-solution/ (accessed December 16, 2019).

20. On November 4, 2019, Plaintiff attended another Town Meeting. The official meeting minutes for that meeting state:

> 110 **DISCUSSION REGARDING SANITATION COLLECTION AND ADA.**
> 111 The Town Attorney discussed the American Disability Act. She stated that recent modifications can be
> 112 made to programs within reason. Mrs. VanEmburgh outlined examples. The Town Attorney gave the
> 113 opinion on whether it is legally required.
> 114 President Ford stated he is aware it is not legally required but should they decide to do it anyway.
> 115 The Town Attorney discussed requirements that should be considered.
> 116 Mr. Silverstein discussed his obstacles with trash receptacles. He suggested working with volunteers and
> 117 exhausting options. Mr. Silverstein stated that before making policy decisions, he would like to see if
> 118 there are organizations that may help.
> 119 Mrs. Cook suggested Public Works try to accommodate the residents with disabilities.
> 120 Mr. Abbatiello stated he would like to speak to the Public Works Department and see what this proposal
> 121 might entail.
> 122 President Ford asked for a recommendation to find out how it could be done and what it would cost.
> 123 Mr. Richardson stated that the staff and Town Attorney did a great job looking at both sides of the
> 124 prospective. He stated that he wants to have the opportunity to do a proper study and look at the situation
> 125 at an annual budget prospective. He stated that he would like to reach out to other communities and find out some options. Mr. Richardson asked if the matter can be revisited the 1st
> 126 meeting in December.
> 127 Mayor Willey stated that other services might be asked to be considered such as grass cutting, sidewalk 128 clearing or having the driveway scraped.
> 129 President Ford stated that we just need to solve the trash issue right now and get recommendations.
> 130 Mr. Engle asked for Public Works to switch the resident's can for a smaller size.

21. On or about December 2, 2019, the Town conducted another public meeting and the Town Council voted 3 to 1 against making any accommodation for back door service, based on the following:

> a) The Town is moving to a mechanical trash can hoisting system for use throughout the Town. Implementing a program to include those with disabilities would be a substantial cost to the Town, and a separate truck manned with three men would have to be purchased at the cost of $160K for the truck and hire 3 sanitation employees at the total cost of $120,000 a year plus administrative fees.[5]
> b) At the prior Town Meeting, a member of the council suggested that community organizations could possibly provide assistants to residents who required such services. [6]
> c) The Town also stated that if such a program were to be implemented, residents would then request other services, such as snow removal.

22. Additionally, the Town contends that only 2% of the Town population would be eligible for these services, and the pro-rata cost of services would be too costly.[7]

---

[5] At the time Plaintiff first made her request to the Town, the Town was already utilizing a 3-manned truck.

[6] Plaintiff has contacted several organizations with a request for assistance, but has not received a response as of the date of this filing.

[7] This projection does not include elderly residents who may be physically unable to move the trash cans on their own. Qualification for back door service typically requires a note from a doctor who has assessed the applicant's disability vis a vis the need for services.

23. Other municipalities, such as the Cities of Rockville, MD[8], Richmond, VA[9], Arlington, VA[10], offer "back door" service for refuse collection to qualifying residents.

24. The official minutes from the December 2, 2019 meeting state in relevant part:

> 66 **TOWN ENGINEER UPDATE ON SANITATION FOR DISABLED RESIDENTS.**
> 67 The Town Engineer Mr. VanEmburgh discussed his findings for trash pickup for disabled
> 68 residents. He discussed other municipalities and their procedures.
> 69 Acting President Ron Engle asked the Town Attorney if there is anything to add.
> 70 The estimated cost in Easton was discussed. The Town Engineer discussed the possibility
> 71 of having to hire additional staff or hire a contractor for services.
> 72 Mr. Silverstein stated that what is being discussed is a one-individual pickup service. He
> 73 stated that he sees it as the responsibility of the homeowner to get their trash out as well
> 74 as grass cutting and snow removal.[11] Mr. Silverstein stated that he is not in favor of
> 75 changing the policy.
> 76 Mrs. Cook stated that Easton can't move to an entire Town automated pickup. She stated
> 77 that it is an option to contract that service.
> 78 Mr. Engle asked for staff recommendations.
> 79 Upon motion by Mr. Silverstein seconded by Mr. Abbatiello and carried, it was the
> 80 consensus of the council to continue with the current sanitation policy with Mrs. Cook
> 81 voting no.

---

[8] https://rockvillemd.gov/FormCenter/Public-Works-8/Apply-for-Backdoor-Recycling-and-Refuse--269 (accessed 12/16/2019).

[9] http://www.richmondgov.com/PublicWorks/forms/SolidWasteBackDoorServiceApplication.pdf (accessed 12/16/2019).

[10] https://recycling.arlingtonva.us/backdoor-collection-application/ (accessed 12/16/2019).

[11] Taxes paid by Town residents do not include grass cutting or snow removal on a homeowner's property.

25. Plaintiff, who already pays for trash collection services as part of her Town taxes, received quotes ranging from $360.00 per year to $720.00 per year for private refuse collection due to the Town's refusal to provide back door service.

26. Plaintiff has requested a reasonable accommodation within the meaning of the ADA, and the Town has discriminated against persons with disabilities by offering "back door" refuse removal to commercial businesses and other municipal-owned refuse containers, but denying this accommodation to disabled residents, such as Plaintiff.

27. The Town contends that, if they offer back door services to Plaintiff, doing so will lead to a parade of horribles that will pose an undue financial burden the Town.

28. As the direct result of the Town's discriminatory practices, Plaintiff, and other similarly situated individuals, have incurred damages and will continue to incur damages.

## COUNT I
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

29. Plaintiff repeats and realleges Paragraphs 1 through 28.

30. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services… of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

31. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132.4 To make out a violation of Title II, plaintiffs must show: (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability. Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 502–03 (4th Cir. 2016) (citing Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir.2005)).

32.     Courts have construed Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations. A Helping Hand, LLC v. Baltimore Cty., MD, 515 F.3d 356, 362 (4th Cir. 2008).

33.     The ADA also forbids "utilizing standards, criteria, or methods of administration" that disparately impact the disabled, without regard to whether such conduct has a rational basis. § 12112(b)(3)(A). Smith–Berch, Inc. v. Baltimore Cty., 68 F. Supp. 2d 602, 621 (D. Md.1999)("Title II prohibits not only intentional discrimination against disabled individuals, but also any policies or practices that have a disparate impact on disabled individuals."). "A cause of action based upon disparate impact arises where facially neutral rules or policies are applied in a way that affects the protected class differently from other groups." Bryant Woods Inn, 911 F. Supp. 918, 939 (analyzing FHA claim); Marriott Senior Living Services, Inc. v. Springfield Township, 78 F. Supp. 2d 376, 388 (E.D. Pa.1999) (finding court's analysis in both FHA and ADA is similar).

34.     At all times relevant herein, the Town of Easton, Maryland had a duty to uphold the law of the United States, including the ADA.

35. Title II of the ADA, 42 U.S.C. 12131, et seq., applies to all activities of state and local governments, and the regulations for Title II of the ADA are set forth in 28 CFR §§ 35.101, et seq.

36. Plaintiff is a qualified individual with a disability under 28 CFR § 35.104 and suffers from an actual disability that permanently and substantially limits a major life activity, as defined under 28 CFR § 35.108.

37. The Town of Easton, Maryland meets the definition of a public entity under 28 CFR § 35.104 and provides trash removal services to its residents.

38. Under 28 CFR § 35.130(a), no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any public entity.

39. Under 28 CFR § 35.130(b)(7)(i), a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity.

40. Under 28 CFR § 35.150(a), a public entity shall operate each service, program or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.

41. Under 28 CFR § 35.150(a)(3), a public entity need not take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. However, even if an action would result in such an alteration or such burdens, a public entity shall take

any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity.

42. Because the Town already provides the equivalent to "back door" trash removal services to certain downtown residents and businesses, as well as manual removal of refuse from the Town's public trash receptacles in the downtown area and other areas of the Town, but has refused and continues to refuse to offer the same type of service to Plaintiff, who is a disabled person under the ADA, and offering such service would not fundamentally alter the nature of the service, Plaintiff's request for this accommodation due to her disability is reasonable.

43. The Town's policies and practices concerning "back door" trash removal differentiates between commercial/municipal residents and individual residents who are otherwise disabled under the ADA, causing a disparate impact.

44. As a direct and proximate result of the acts and omissions of the Defendant, Plaintiff was discriminated against by Defendant's refusal to offer "back door" refuse pickup.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action for all claims so triable.

## RELIEF

WHEREFORE, Plaintiff respectfully request that this Honorable Court provide the following relief:

a. Issue a declaratory judgment that Defendant's policies, procedures and practices have subjected Plaintiff to discrimination in violation of Title II of the Americans with Disabilities Act;

b. Order Defendant to promulgate and comply with policies and procedures to ensure that Defendant does not discriminate in the future against Plaintiff;

c. Order Defendant to train its officers, agents, representatives and employees about its obligations pursuant to federal law;

d. Enjoin Defendant from any policy, procedure or practice that will deny Plaintiff meaningful access to and an equal opportunity to benefit from Defendant's services or that will exclude Plaintiff from its programs or services;

e. Award reasonable costs and attorney's fees; and

f. Award any and all other relief that may be necessary and proper.

Respectfully submitted,

By: /s/ Derek A. Hills
Derek A. Hills (Bar No. 19925)
The Law Office of Derek A. Hills, LLC
PO Box 3084
Easton, MD 21601
Telephone: (443) 239-4626
dhills@dahlawoffice.com
*Counsel for Plaintiff*